#4

ISBH/GSC

M/IPP

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

Previous Case
@ 2:20-W-520

# UNITED STATES DISTRICT COURT

for the

Western_____ District of _Pennsylvania__

___Civil___ Division

James A. Paluch, Jr.; Willie M. Harris;
and those similarly-situated, et al.,

_____
*Plaintiff(s)*
*(Write the full name of each plaintiff who is filing this complaint.*
*If the names of all the plaintiffs cannot fit in the space above,*
*please write "see attached" in the space and attach an additional*
*page with the full list of names.)*

**-v-**

George Little, Secretary of the PA DOC;
Eric T. Armel; Joseph Trempus; CO1
Cavaliere; CO1 Rankin; CO1 Halkias;CO1
Coffman; Sgt. Sheetz; CO1 J. Burns; ~~Set~~
~~Nelson~~, et al.*Defendant(s)* (see attached)
*(Write the full name of each defendant who is being sued. If the*
*names of all the defendants cannot fit in the space above, please*
*write "see attached" in the space and attach an additional page*
*with the full list of names. Do not include addresses here.)*

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. ___2:22-W-720___

*(to be filled in by the Clerk's Office)*

Supplemental Jurisdiction Invoked
(State Law Claims)

Privacy Act Invoked (5 U.S.C. §552a)

Declaratory and Injunctive Relief
Demanded

JURY TRIAL DEMANDED

CLASS ACTION (CIVIL)

CLASS ACTION

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

(Prisoner Complaint)

RECEIVED

MAY 16 2022

CLERK, U.S. DISTRICT COURT
FOR THE WESTERN DISTRICT
OF PENNSYLVANIA

### NOTICE

Federal Rules of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to
electronic court files. Under this rule, papers filed with the court should *not* contain: an individual's full social
security number or full birth date; the full name of a person known to be a minor; or a complete financial account
number. A filing may include *only*: the last four digits of a social security number; the year of an individual's
birth; a minor's initials; and the last four digits of a financial account number.

Except as noted in this form, plaintiff need not send exhibits, affidavits, grievance or witness statements, or any
other materials to the Clerk's Office with this complaint.

In order for your complaint to be filed, it must be accompanied by the filing fee or an application to proceed in
forma pauperis.

## I.    The Parties to This Complaint

### A.    The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint.  Attach additional pages if needed.

| | |
|---|---|
| Name | James A. Paluch, Jr. (co-lead Plaintiff) |
| All other names by which you have been known: | |
| ID Number | BQ-3769 |
| Current Institution | SCI-Fayette |
| Address | 50 Overlook Drive |
| | Labelle                PA            15450-1050 |
| | *City*                *State*            *Zip Code* |
| | (see attached) |

### B.    The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation.  Make sure that the defendant(s) listed below are identical to those contained in the above caption.  For an individual defendant, include the person's job or title *(if known)* and check whether you are bringing this complaint against them in their individual capacity or official capacity, or both.  Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | George Little |
| Job or Title *(if known)* | Secretary, PA Dept. of Corrections |
| Shield Number | |
| Employer | Commonwealth of PA |
| Address | 1920 Technology Parkway |
| | Mechanicsburg          PA          17050 |
| | *City*                *State*            *Zip Code* |

[ ] Individual capacity    [X] Official capacity

Defendant No. 2

| | |
|---|---|
| Name | Eric T. Armel |
| Job or Title *(if known)* | Facility Manager |
| Shield Number | |
| Employer | PA DOC |
| Address | 50 Overlook Drive |
| | Labelle                PA          15450-1050 |
| | *City*                *State*            *Zip Code* |

[ ] Individual capacity    [X] Official capacity

Defendant No. 3

Name     Joseph Trempus

Job or Title *(if known)*     Deputy Superintendent, Facility Mgmt.

Shield Number

Employer     PA DOC

Address     50 Overlook Drive

| Labelle | PA | 15450-1050 |
|---|---|---|
| *City* | *State* | *Zip Code* |

[ ] Individual capacity     [X] Official capacity

Defendant No. 4

Name     CO1 Cavaliere

Job or Title *(if known)*     Prison Guard

Shield Number

Employer     PA DOC

Address     50 Overlook Drive

| Labelle | PA | 15450-1050 |
|---|---|---|
| *City* | *State* | *Zip Code* |

[X] Individual capacity     [ ] Official capacity
(see attached)

## II.    Basis for Jurisdiction

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971),* you may sue federal officials for the violation of certain constitutional rights.

A.    Are you bringing suit against *(check all that apply)*:

[ ] Federal officials (a *Bivens* claim)

[X] State or local officials (a § 1983 claim)

B.    Section 1983 allows claims alleging the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." 42 U.S.C. § 1983. If you are suing under section 1983, what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials?

1st Amendment (Retaliation) (Privacy Invasion)
4th Amendment (Unlawful Search & Seizure) (Theft/Loss of Property)
Federal Tort (Failure to Protect Property) (Inadequate Policy)
                 (Mishandling of Private Property)
~~42 U.S.C. §1983 (Violation of Civil Rights) (Conspiracy to Violate Civil Rights)~~
(see attached)

C.    Plaintiffs suing under *Bivens* may only recover for the violation of certain constitutional rights. If you are suing under *Bivens*, what constitutional right(s) do you claim is/are being violated by federal officials?

D.  Section 1983 allows defendants to be found liable only when they have acted "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983.  If you are suing under section 1983, explain how each defendant acted under color of state or local law.  If you are suing under *Bivens*, explain how each defendant acted under color of federal law.  Attach additional pages if needed.

(see attached page)

## III.   Prisoner Status

Indicate whether you are a prisoner or other confined person as follows *(check all that apply)*:

☐  Pretrial detainee

☐  Civilly committed detainee

☐  Immigration detainee

☒  Convicted and sentenced state prisoner

☐  Convicted and sentenced federal prisoner

☐  Other *(explain)*

## IV.   Statement of Claim

State as briefly as possible the facts of your case.  Describe how each defendant was personally involved in the alleged wrongful action, along with the dates and locations of all relevant events.  You may wish to include further details such as the names of other persons involved in the events giving rise to your claims.  Do not cite any cases or statutes.  If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph.  Attach additional pages if needed.

A.  If the events giving rise to your claim arose outside an institution, describe where and when they arose.

(see attached)

PA DOC Central Office establishes all policies and procedures concerning the private and personal properties of state prisoners.

B.  If the events giving rise to your claim arose in an institution, describe where and when they arose.
SCI-Fayette (applies to all other PA DOC-controlled state facilities)

(see attached)

C.    What date and approximate time did the events giving rise to your claim(s) occur?

(see attached)

D.    What are the facts underlying your claim(s)? *(For example: What happened to you? Who did what? Was anyone else involved? Who else saw what happened?)*

Personal property of the plaintiffs was mishandled, lost, disposed of, and/or stolen or damaged unlawfully while in the possession of the PA DOC and its employees. The PA DOC's policies concerning the handling, searching of, seizure of, packing of, storage of, and/or disposition of state prisoners' private and personal properties are inadequate under the standards of federal and Pennsylvania common laws.

(see attached)

## V.    Injuries

If you sustained injuries related to the events alleged above, describe your injuries and state what medical treatment, if any, you required and did or did not receive.

Invasion of privacy, retaliation, loss and/or damage of personal properties, failure to protect private and personal properties, unlawful searches and seizures of personal properties, etc.

(see attached)

## VI.    Relief

State briefly what you want the court to do for you. Make no legal arguments. Do not cite any cases or statutes. If requesting money damages, include the amounts of any actual damages and/or punitive damages claimed for the acts alleged. Explain the basis for these claims.

1.  For the PA DOC to revise/amend its policies and procedures which afford greater protections for the handling and disposition of state prisoners' private and personal properties.
2.  Fair and equitable compensation for all mishandled, lost, stolen, damaged, and/or disposed properties caused by the defendants. Monetary damages to be determined.
3.  Declaratory, injunctive, and any other relief available by law or court rule, etc.

(see attached)

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

**VII.     Exhaustion of Administrative Remedies Administrative Procedures**

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

Administrative remedies are also known as grievance procedures. Your case may be dismissed if you have not exhausted your administrative remedies.

A.     Did your claim(s) arise while you were confined in a jail, prison, or other correctional facility?

[X] Yes

[ ] No

If yes, name the jail, prison, or other correctional facility where you were confined at the time of the events giving rise to your claim(s).

SCI-Fayette

B.     Does the jail, prison, or other correctional facility where your claim(s) arose have a grievance procedure?

[X] Yes

[ ] No

[ ] Do not know

C.     Does the grievance procedure at the jail, prison, or other correctional facility where your claim(s) arose cover some or all of your claims?

[ ] Yes

[ ] No

[X] Do not know

If yes, which claim(s)?

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

D.    Did you file a grievance in the jail, prison, or other correctional facility where your claim(s) arose concerning the facts relating to this complaint?

[X] Yes

[ ] No

If no, did you file a grievance about the events described in this complaint at any other jail, prison, or other correctional facility?

[ ] Yes

[ ] No

E.    If you did file a grievance:

1.  Where did you file the grievance?  SCI-Fayette, SCI-Coal Township, SCI-Pine Grove, SCI-Albion, SCI-Greene, SCI-Smithfiled, SCI-Camp Hill

2.  What did you claim in your grievance?
The privacy of privileged communications and work product were being un-lawfully violated.  Private and personal properties were being unlawfully mishandled, searched, confiscated, seized, damaged, disposed of, etc. The PA DOC failed to have an adequate policy in place to protect the per-sonal and private properties of state prisoners, etc.

3.  What was the result, if any?
SCIs and the PA DOC denied any wrongdoings and/or unlawful acts (which is business as usual).

4.  What steps, if any, did you take to appeal that decision?  Is the grievance process completed?  If not, explain why not. *(Describe all efforts to appeal to the highest level of the grievance process.)*
All grievances were denied, appealed, and exhausted.  In some cases, a plaintiff may have been denied access to the grievance system or was either unable to file a grievance and/or appeal due to a disability which was not accommodated nor provided assistance for by prison officials.

F.    If you did not file a grievance:

1.    If there are any reasons why you did not file a grievance, state them here:

Plaintiff Paluch, for example, was unable - at times - to file a grievance and/or an appeal due to his writing disability and need for an assistive writing device and/or request for assistance.

2.    If you did not file a grievance but you did inform officials of your claim, state who you informed, when and how, and their response, if any:

Rhonda House, Shelly Mankey, Lou Bozelli, et al. either denied Plaintiffs' request for an AWD and/or assistance, disregarded or ignored requests, or referred the Plaintiffs to other persons who took no action, etc.

G.    Please set forth any additional information that is relevant to the exhaustion of your administrative remedies.

Administrative remedies were exhausted to the best of the Plaintiffs' ability.  To the extent that administrative remedies were not properly exhausted was due to some obstacle created or caused by prison officials and is without prejudice to the Plaintiffs.

*(Note: You may attach as exhibits to this complaint any documents related to the exhaustion of your administrative remedies.)*

## VIII.  Previous Lawsuits

The "three strikes rule" bars a prisoner from bringing a civil action or an appeal in federal court without paying the filing fee if that prisoner has "on three or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).

To the best of your knowledge, have you had a case dismissed based on this "three strikes rule"?

☐ Yes

☒ No

If yes, state which court dismissed your case, when this occurred, and attach a copy of the order if possible.

N/A

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

A.   Have you filed other lawsuits in state or federal court dealing with the same facts involved in this action?

☒ Yes   Not certain.   Perhaps similar in nature.

☒ No

B.   If your answer to A is yes, describe each lawsuit by answering questions 1 through 7 below. *(If there is more than one lawsuit, describe the additional lawsuits on another page, using the same format.)*

1.   Parties to the previous lawsuit
    Plaintiff(s)    Paluch
    Defendant(s)    Palakovich

2.   Court *(if federal court, name the district; if state court, name the county and State)*
    Cumberland County CCP, PA

3.   Docket or index number
    Not available

4.   Name of Judge assigned to your case
    Not available

5.   Approximate date of filing lawsuit
    2010 or 2011

6.   Is the case still pending?

    ☐ Yes

    ☒ No

    If no, give the approximate date of disposition.   Uncertain.   Published Cmwlth. Ct. case.

7.   What was the result of the case? *(For example: Was the case dismissed? Was judgment entered in your favor? Was the case appealed?)*
    Dismissed by Cumberland CCP, appealed, dismissed by Cmwlth. Ct.

C.   Have you filed other lawsuits in state or federal court otherwise relating to the conditions of your imprisonment?

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

[X] Yes

[ ] No

D.    If your answer to C is yes, describe each lawsuit by answering questions 1 through 7 below. *(If there is more than one lawsuit, describe the additional lawsuits on another page, using the same format.)*

1.    Parties to the previous lawsuit
Plaintiff(s)    Paluch
Defendant(s)    Lewis, et al.

2.    Court *(if federal court, name the district; if state court, name the county and State)*

W.D.Pa.

3.    Docket or index number
2:21-CV-1564

4.    Name of Judge assigned to your case
Bissoon

5.    Approximate date of filing lawsuit
Nov. 2021

6.    Is the case still pending?

[X] Yes

[ ] No

If no, give the approximate date of disposition

7.    What was the result of the case? *(For example: Was the case dismissed? Was judgment entered in your favor? Was the case appealed?)*
N/A

## IX.     Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.     For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:          5/10/22

Signature of Plaintiff

Printed Name of Plaintiff          James A. Paluch, Jr. (lead co-plaintiff)

Prison Identification #          BQ-3769

Prison Address          50 Overlook Drive

Labelle                              PA          15450-1050
_____City_____          _State_          _Zip Code_

### B.     For Attorneys

Date of signing:          _____

Signature of Attorney          _____

Printed Name of Attorney          _____

Bar Number          _____

Name of Law Firm          _____

Address          _____
                    _____
          _____City_____          _State_          _Zip Code_

Telephone Number          _____

E-mail Address          _____

## SUPPLEMENT TO CLASS ACTION COMPLAINT

I.    **The Parties to this Complaint**
      **A.  The Plaintiffs**

      Willie M. Harris (co-lead Plaintiff)
      DK-1644
      SCI-Fayette
      50 Overlook Drive
      Labelle, PA  15450-1050

3.   Any other incarcerated citizen currently or formerly in the cus-
      tody of the Pennsylvania Department of Corrections ("PA DOC")
      may be added withe court's permission.

**B.  The Defendants**

5.   Sgt. Tyner a/k/a Lt. Tyner
      50 Overlook Drive
      Labelle, PA  15450-1050

6.   Sgt. Sheetz
      50 Overlook Drive
      Labelle, PA  15450-1050

7.   Sgt. Ohrman
      50 Overlook Drive
      Labelle, PA  15450-1050

8.   J. Burns (Prison Guard)
      50 Overlook Drive
      Labelle, PA  15450-1050

9.   Helman (Prison Guard)
      50 Overlook Drive
      Labelle, PA  15450-1050

10.   Rankin (Prison Guard)
      50 Overlook Drive
      Labelle, PA  15450-1050

*#11 is on next page.*

12.  Halkias (Prison Guard)
      50 Overlook Drive
      Labelle, PA  15450-1050

13.  Coffman (Prison Guard)
      50 Overlook Drive
      Labelle, PA  15450-1050

14.  Polito (Prison Guard)
      50 Overlook Drive
      Labelle, PA  15450-1050

11. B. Twardzik (Prison Guard)
    50 Overlook Drive
    Labelle, PA  15450-1050

15. Delsandro (Prison Guard)
    50 Overlook Drive
    Labelle, PA  15450-1050

16. J. Thomas (Prison Guard)
    50 Overlook Drive
    Labelle, PA  15450-1050

Defendants Little, Armel, Trempus, and Tyner are being sued in the official capacities.

Defendants Cavaliere, Tyner, Sheetz, Ohrman, Burns, Helman, Rankin, Halkias, Coffman, Polito, Twardzik, Delsandro, and Thomas are being sued in their individual capacities.

## III.    Basis for Jurisdiction

B. 14th Amendment (Unequal Treatment of the Law)
   Common Law (Failure to Protect Property) *(Assault)* *(Battery)*
   Common Law ((Deprivation of Property) (Loss of Property) *(Harassment)*
   Common Law (Theft) (Fraud) (Unlawful Disposition of Property)
   Common Law (Mishandling of Property) *(Aggravated Harassment)*
   Article 1 §1 (Violation of Inherent Rights)
   8th Amendment (Deliberate Indifference) (Cruel and Unusual Punihment)
   *1st Amendment (Campaign of Harassment)*
   Plaintiffs reserve their right to amend, as needed.

   D.    All the defendants have acted, and continue to act, under color of state law at all times relevant to this Complaint.

## IV.    Statement of Claim

A. PA DOC Central Office establishes all policies and procedures concerning the use of force, methods of deescalation, measues to prevent abuse, and the training or lack thereof.

B. The class is under the care (or lack thereof), custody, and control of the PA DOC and each State Correctional Institution ("SCI"), including boot camp (Quehanna), and Community Corrections Centers ("CCC").

   All events arose from their respective SCI, boot camp, and/or CCC where the Plaintiffs are currently and/or formerly housed.

C. The events which give rise to the claims occurred within the proximity of the statute of limitations for personal injuries, unless otherwise extended by law or court rule.

D.

On or about 5-20-22, Plaintiff Harris ("Harris") was issued a false
misconduct report and was placed into the Restricted Housing Unit
("RHU").  Prior to going to the RHU, he was not permitted to pack
his personal property.  A staff member Def. Coffman, packed up Harris'
property.  In the RHU, Harris was not allowed to be present during
the search of his property.  When he was allowed to participate in
the inventory, he discovered that his typewriter had been destroyed
and was not working properly.  Various personal and private property
items were missing such as U.S. mail, legal documents, receipts,
food products, and other items which he purchased.  Harris' keyboard
was discovered to be dented.  Harris filed a grievance which was
denied, appealed, remanded, etc.  Prison officials finally admitted
that Harris' typewriter was inoperational and the typewriter was
exchanged with a typewriter that was functional.  Prison officials
continued to deny any further wrongdoing and Harris suffered damage to
his keyboard and missing property items.  Defs. Cavaliere, Halkias,
and Tyner were in possession of Harris' property in the RHU.  All
of these defendants, Coffman, Cavaliere, Halkias, and Tyner deny
mishandling and/or damaging Harris' property.

On or about August 31, 2020, Plaintiff Paluch ("Paluch") attempted
to place his outgoing U.S. mail in the unit mailbox but Def. Sheetz
would not allow it.  Sheetz ordered Paluch to return to his assigned
cell.  When Paluch attempted to retrieve his kosher breakfast meal,
Sheetz ordered Paluch to leave it at the table.  Paluch refused and
in response, Sheetz grabbed the arm of Paluch's wheelchair and violent-
ly shook it.  Paluch again refused to return the kosher bag and Sheetz
called Paluch a "retarded Jew".  Sheetz then went into Paluch's as-
signed cell and began dumping Paluch's personal property onto the
cell floor, including boxes of legal documents.  Sheetz then took
a pile of Paluch's Polaroid photographs and threw them violently
towards the corner of the cell.  Sheetz then threw one of Paluch's
kippot onto the cell floor and stepped on it with his boot.  Sheetz
also kicked some of Paluch's paperwork from inside the cell onto
the outside dayroom floor (which was recorded on video camera).
When Paluch re-entered the cell, it was entirely in disarray or what
is commonly referred to as "trashed".  Paluch discovered that six
(6) Polaroid photographs were damaged, and another was found floating
on the inside of the cell's toilet.  Paluch immediately notified
the Facility Manager add Def. Trempus requesting that the video evi-
dence be preserved.  Paluch filed a grievance but did not receive
a response.  Paluch complained about this to the Grievance Coordina-
tor who informed him that if he wanted an extra copy he would have
to pay for it!  Paluch asserts and invokes that prison officials
failed to provide him with a timely response to his grievance and
was obstructed from being able to appeal.

Sometime thereafter, Paluch was placed on GA-Unit where he was sub-
jected to a campaign of harassment by Def. Burns.  Paluch and another
prisoner witness observed Burns crushing the contents of his kosher
meal bags.  When Paluch left the cell and exited the unit to go on
a pass, Burns would go into Paluch's assigned cell and dump his boxes
of personal property onto Paluch's bed.  When Paluch inquired of
Burns as to why he did this, Burns told Paluch, "Because I do not

like you." On one occasion, Burns entered Paluch's assigned cell while Paluch went to the medline and took a bag of Maxwell House coffee (brand new, sealed), a half-box of artificial sweetener, and eleven (11) postage-paid envelopes from Paluch's cabinet because when Paluch returned to the cell these items were missing. A grievance was filed and denied. Paluch was unable to appeal due to an obstruction and because of the loss of his grievance records.

Thereafter, Paluch was issued a falsified misconduct report for allegations that he threatened a staff member with bodily harm and used obscene or inappropriate language to Def. Thomas, which was not true. In fact, Thomas engaged in a campaign of harassment against Paluch in which Thomas accused him of being a "child molester" in the presence of other prisoners. Thomas would also cause Paluch to miss his morning doses of seizure medication just because Paluch did not have his i.d. card ready. When Paluch requested to speak with the zone lieutenant, Thomas began yelling for Paluch to go back to his housing unit. Paluch insisted on being able to speak with the zone liuetenant, but was handcuffed and taken to the RHU.

In the RHU, Defs. Cavaliere and Rankin searched his personal property outside of his presence. During the day of the inventory, Cavaliere had already prepared a box of property which Cavaliere chose for Paluch to have while in the RHU. When Paluch requested that he be allowed a sufficient amount of time to go through his property to make certain that it was accounted for, was not damaged, and nothing missing, Cavaliere and Rankin refused. When Paluch requested to speak with the RHU lieutenant, Cavaliere and Rankin denied his request and claimed that the lieutenant was not available. When Paluch refused to sign the DC-153M form, Cavaliere became upset and removed him from the property room. Cavaliere and Rankin then gave Paluch a box of the only property items Paluch was permitted to have while in the RHU (depriving Paluch of his right to pick and choose what he wanted). Paluch was also denied his right to watch his property being packed and to sign the tape seals.

At the time, Defs. Little, Armel, Trempus, and Tyner took no action to ensure that RHU property searches and inventories were conducted and/or recorded on video camera with audio capabilities.

Paluch was unable to file a grievance due to a writing disability and because he was ordered by his physician to cease any repetitve writing and/or any writing which caused him pain. Paluch requested to be provided with assistance in filing grievances but was denied.

On January 6, 2021, Paluch requested to inspect all of his electronics and to make certain that all of his personal prperty was accounted for. However, Cavaliere and Tyner denied his requests. Paluch was placed on HC-Unit and discovered that his Swintec word processor was damaged (the hammer and engine were bent out of place). His print-wheel was missing and it appeared that wires were pulled out of place. Paluch also discovered that much of his personal property was missing (too numerous to mention herein). Paluch suffered a teremendous loss of his personal and private properties. Cavaliere also gave Paluch a laundry bag of another prisoner, Gregory Love, which Paluch returned to a prison guard named "Minnie". Paluch filed a grievance.

Soon thereafter, Paluch engaged in an exchange of heated words with
Def. Delsandro during the evening count. Delsandro, being disgruntled,
returned to Paluch's assigned cell and radioed the guard in the control
station to open the cell. When Delsandro stepped into the cell,
Paluch asked for his name to which Delsandro responded, "Fuck you!
That's my name!" Delsandro then stepped outside of the cell and
violently slammed the cell door so hard that it jumped back from
the locking mechanism. Delsandro then began making threats, antag-
onizing Paluch. Plauch ordered Delsandro to leave the cell but Del-
sandro refused and continued to yell at Paluch. When Paluch arose
from the bunk he walked towards the handrail (on the other side of
the cabinet). When Paluch turned his head towards Delsandro, Del-
sandro sprayed Paluch with oleoresin capsicum without any warning.
Delsandro sprayed Paluch in his eyes, ear, and the right side of Paluch's
head. Paluch was immediately blinded and unable to defend himself.

Paluch was then taken to the Medical Department to have his eyes
flushed, but this did not help. He was then admitted to the RHU
whereupon he received a false misconduct authored by Delsandro who
claimed that Paluch "disobeyed an order". The incident involving
Delsandro was grieved and Paluch requested that the video evidence
be preserved. Paluch was never interviewed concerning his claims
of abuse and excessive force. Lt. Woods denied the grievance and
Paluch was unable to obtain assistance to draft an appeal despite
repeated requests for assistance.

In the RHU, Paluch was was interviewed concerning the damage to his
word processor and missing property. Lt. Dongilli, who served as
the Grievance Officer repeatedly berated Paluch by calling him a
"bad person" and accused him of being a "troublemaker" who just en-
joys filing grievances and lawsuits. Dongilli claimed that Def.
Halkias confiscated Paluch's word processor because it had "fruit
stickers" on it and not because the word processor was actually
damaged. Dongilli claimed that the word processor worked just fine
and when Paluch requested proof, Dongilli refused his request.

Following Paluch's release from the RHU, Dongilli denied Paluch's
grievance concerning the damage to his word processor and missing
property, etc. Paluch again requested assistance from numerous staff
members to help him draft both grievance and misconduct appeals,
but those requests were either ignored or denied. Paluch even asked
Harris to assist him, but Harris was unable to do so.

Paluch has an established history of filing formal grievances against
the PA DOC and its staff for various misconduct, abuses, and other
wrongdoings. He also has an established history as a civil litiga-
tor. Coupled with the fact that PA DOC targets him for his faith-
based beliefs, Paluch is a frequent victim of falsified misconduct
reports, harassment, retaliation, and other abuses by select PA DOC
staff. Harris also has a history of filing grievances and speaking
out against the inhumane treatment that prisoners are often subject
to by select PA DOC staff members. He is also a target of harassment
and retaliation, including falsified misconduct reports.

Paluch hereby makes reference to and incorporates herein the legal
claims and issues in his pending litigation, Paluch v. Lewis, et

al. USDC-WDPA #2:21-CV-1564 (Bissoon) as though fully set forth at length.

During the incident involving Sheet's misconduct, Def. Helman agreed with Sheetz's remarks that Paluch was a "retarded Jew". Helman also denied Paluch a kosher meal (which was grieved) and in which Helman was seen kicking Paluch's religious materials which were placed outside of Paluch's cell door by the Imam. Helman kicked the religious materials so hard that it scattered into the unit dayroom and in front of the shower area! Not only did a prisoner witness this incident, but it was recorded on video (and grieved). Both grievances were denied, and Paluch was unable to appeal them due to obstruction and his inability to receive assistance.

Defs. Little, Armel, Trempus, and Tyner have an established history of denying grievances, changing the narrative of the grievance, playing the "reverse-blame game," and conducting bogus investigations and reviews during the grievance review system process. The PA DOC and its Secretary's Office of Inmate [sic] Grievances and Appeals ("SOIGA") also has an established history of denying meriotious grievance appeals.

Paluch and Harris as well as those similarly-situated have no safeguards nor protections afforded to them for falsified misconduct reports. PA DOC employees are not required to wear body cameras which would be able to record the video and audio of a staff member's behaviors as well as prisoners' behaviors which could be used as evidence in administrative hearings, disciplinary hearings, grievance reviews, and in court, etc.

Paluch and Haris assert that the PA DOC does not video nor audio records its administrative and disciplinary hearings which the Plaintiffs challenge as a violation of 2 Pa.C.S. §553, et seq. (administrative hearings must be recorded). Def. Little's employees only record their version of the facts to benefit prison officials which often contains false and/or misleading information used to harm state prisoners such as Paluch and Harris. This applies to all class members.

In April or May 2021, Paluch was placed on FA-Unit where he was subjected to a falsified housing unit report in which his behavior was unfairly described as being "poor". He was falsely accused of having poor hygiene. Paluch grieved the matter only to discovere that a unit manager approved of the false reporting and that prison officials refuse to disclose the names of the staff persons responsible for making the false reports.

The class has no safeguards nor protections from bad staff members who make false reports against them. They are not subject to any accountability nor discipline. Paluch and Harris assert and aver that the reporting of knowingly falsified information in official Commonwealth of Pennsylvania documents is a criminal offense.

Paluch reported the falsification of Thomas' and Delsandro's falsified misconduct reports to the Pennsylvania State Police. He also reported to the PSP that his personal property had been damaged,

stolen, and/or missing. Paluch also reported that Delsandro used excessive force against him in violation of the PA Crimes Code. However, the PSP has not conducted any meaningful investigation into these reports and to date has not taken any actions which would be expected of a legitimate law enforcement agency.

Paluch has utilized the PA DOC's Abuse Hotline as a means to report abuse for which the PA DOC has taken no action. While in the RHU during November and December 2020, Paluch made numerous requests to utilize the PA DOC's Abuse Hotline which was denied.

Although not all class members are targets of abuse, all class members are subjected to daily abuses which do not get reported and/or are not formally grieved because state prisoners are in fear of retaliation by the PA DOC and its employees.

Paluch and Harris assert that at SCI-Fayette, select staff such as Sheetz, Ohrman, Burns, and many others have a practice and custom of targeting prisoners they do not like by "trashing" their assigned cells, stealing personal property items, damaging personal property items, and leaving the cell in disarray. Defs. Armel and Trempus are aware of these abusive practices and have taken no preventive action to stop them. As a matter of fact, newly hired guard trainees are taught that this is an acceptable practice for disciplining prisoner's who may break the rules.

Class members are denied of protective measures to ensure that their personal and private properties are safe and secure from damage, loss, theft, and other mishandling because Def. Little has failed have an adequate policy(ies) and procedures in place which would prevent PA DOC employees from mishandling their properties. The current policies and procedures are so broad and ambiguous, that it allows PA DOC employees to interpret it arbitrarily and allows for such abuses to be continually employed by unruly staff such as Defs. Cavaliere, Sheetz, Ohrman, Burns, Polito, Helman, Rankin, Coffman, Twardzik, Halkias, and Tyner.

In early 2021, Paluch was placed in administrative custody for purposes of a COVID-19 quarantine which is neither authorized by the DC-ADM 802 nor 37 Pa.Code §93.11, et seq. Defs. Polito and Ohrman refused to allow Paluch to be present for the inventorying of his personal properties. Polito even falsified a report that Paluch refused to be present during the inventory, a claim which is untrue. Ohrman denied Paluch's request to inventory his property upon leaving the RHU and in allowing him to inspect his electronic items. Follow-release from administrative confinement, Paluch immediately discovered that his calculator was inoperable, and that certain items were missing from his personal property. Paluch's Run-a-Thon t-shirt was intentionally ripped along the seams of the sleeves. Paluch made a written complaint to the L-Unit Manager who supported Polito's and Ohrman's claims of wrongdoing. Paluch was unable to file a grievance due to his writing disability and his requests for assistance were repeatedly ignored or denied by prison officials.

Paluch has previously filed litigation against the PA DOC and select employees concerning the damage of his personal properties, missing

personal property items, etc. only to have his civil claims dismissed due to technicalities and/or other arbitrary judicial practices. Paluch asserts that he has lost faith in the state court's judicial system. It is akin to a rape victim being repeatedly raped over and over again!

Paluch and Harris are bringing foreth this class action civil suit not as a means to annoy, embarrass, or to humiliate Def. Little and the PA DOC, but rather because it is necesary for the federal court to take a more serious look and approach to help stop these abusive and oppressive acts of inhumane and ████████ uncivil practices and customs from continuing to occur. It is an opportunity to bring justice into Pennsylvania's state prison system, to take corrective action, and implement better policies and procedures which will be better designed to protect prisoners and their personal and private properties from intentional abuse and/or neglect.

## V.     Injuries

Since Delsandro's unlawful actions of assaulting and causing battery to Paluch, Paluch's visionary problems have worsened. He is currently waiting to see an optometry specialist. His eyes are subject to frequent episodes of flare-ups which cause burning and itching and for which Paluch receives daily treatment (saline eye drops) for (which does not always work).

Paluch and Harris are also concerned about prison officials searching their privileged mail, correspondence, and other private documents (pro se work product) while outside of their presence. Privileged documents should never be read nor disclosed to prison officials without a valid court order for which the class should receive due process protections. At a minimum, Paluch and Harris assert that they have a right to pack their own property prior to being admitted to a Level 5 housing unit, transfer, etc. as a means to ensure the integrity of the search by PA DOC employees. Def. Little has failed to offer such protections and such privacy violations undoubtedly violate the First Amendment and Article 1 §1 of our PA Constitution.

The abuses complained of herein, in whole or in part, rise to the level of deliberate indifference because they are so recklessly cruel, unusual, unnecessary, and violate the standards of human decency.

Plaintiffs reserve their right to amend.

## VI.    Relief

4. As to Paluch, monetary damages in an amount in excess of $10,000.00 against each defendant, including punitive damages in an amount in excess of $5,000.00 against each defendant.

5. As to Harris, monetary damages in an amount in excess of $8,000.00 against each defendant and $4,000.00 in punitive damages against each defendant.

6. As to any other prospective Plaintiff in the class, monetary in an amount in excess of equity which is both fair and reasonable as to the relief they requested in their grievances and/or that which would reasonably compensate the Plaintiff for the actual amount of their loss and one-half of that amount in punitive damages.

7. Attorneys fees and costs; Court fees and costs; and compensation for any pro se litigation expenses (to be determined).

X.    Other

1. Paluch, Harris, and prospective Plaintiffs ("class") hereby assert that the policies, procurcedures, customs, and practices of Defs. Little, Armel, Trempus, and Tyner were so egregious as to offend our U.S. Constitution and PA Constitution that they must be held liable as supervisors in their official capcities and for any other violations of law cognizable to liability.

2. The class hereby asserts that the actions of Defs. Tyner, Sheetz, Ohrman, Burns, Helman, Rankin, Cavalliere, Halkias, Coffman, Polito, Twardzik, Delsandro, and Thomas were so unethical, criminal, intentional, and committed with such reckless disregard to the common and federal laws designed to protect the Plaintiffs' civil rights, that such misconduct and wrongdoings exceeded the scope of their official duties and that these defendants must be held accountable and civilly liable in their individual capacities.

3. The class invokes its Seventh Amendment right and demands a jury trial on all issues triable by a jury.

4. The trial court has jurisdiction over the class' claims of violation of federal constitutional rights under 42 U.S.C. §§ 1331(1) and 1343. The trial court also has supplemental jurisdiction over the class' state law tort claims under 28 U.S.C. §1367.

5. The class reserves its right to amend and/or supplement any part of this civil action at law as allowed by law and/or court rule.


So supplemented.

BY THE PLAINTIFFS:                          Pro se
                                            5/9/22


JAMES A. PALUCH, JR.
WILLIE M. HARRIS
SCI-FAYETTE
50 OVERLOOK DRIVE
LABELLE, PA  15450-1050


20